UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMIAH JOHNSON,

        Petitioner,        Case Number: 2:13-12407

v.        HONORABLE GERALD E. ROSEN

KENNETH T. MCKEE,

        Respondent.
_____/

**ORDER OF SUMMARY DISMISSAL AND
DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Jeremiah Johnson is a state inmate currently incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan, pursuant to convictions for second-degree murder, failure to stop at the scene of an accident resulting in death when at fault, and failure to stop at the scene of an accident resulting in serious impairment or death. He has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that he is incarcerated in violation of his constitutional rights. The Court concludes that Petitioner fails to state a claim upon which relief may be granted and dismisses the petition.

**I.**

The Michigan Court of Appeals described the facts leading to Petitioner's convictions as follows:

> This case arises from a car crash that occurred on the night of October 4, 2009, in Detroit, Michigan. On that evening, Johnson and his girlfriend, Iesha Thomas, went to a club in Detroit. They arrived sometime before midnight.

Before they got there, they each had already drank a half pint of "1800" liquor. They were at the club for approximately half an hour when Thomas left in Johnson's blue Dodge Ram pickup truck to go buy more liquor. She could not find a store to buy liquor, so she returned to the club and attempted to park on a side street. But before she got out of the truck, someone approached her and informed her that she could not park there. She called Johnson, who was still in the club, to come out and move the truck.

When Johnson came outside, the couple began yelling and fighting. According to Thomas, Johnson accused her of having sex with the man who told her to move the truck. Thomas testified that Johnson hit her in the face two or three times with a closed hand, and she began to hit him back. Thomas then walked away from Johnson and went to a BP gas station down the street. Johnson followed her. While inside the station, the couple continued to fight and hit each other. They then left the gas station, and Johnson's friends, Rick and Dee, [ ] who had driven the truck to the gas station, tried to get Thomas to go in the truck with Johnson. She refused and walked away toward the service drive of the Chrysler freeway. Johnson again followed her and began hitting her and kicking her.

Eyewitness Roderick Simpson testified that he and a couple friends were at the BP station at about 11:30 p.m. on October 4, 2009. The men saw Johnson and Thomas fighting on the Southfield service drive, right next to the BP station. Simpson then saw a Dodge Ram pickup truck pull out of the gas station parking lot and drive over to the couple. The driver walked away, and Johnson pulled or pushed Thomas into the truck. The truck drove off down the service drive, but when it went around the overpass it hit the guardrail and stopped. Thomas then jumped out of the truck and ran out into the street. A white car stopped at the light where Thomas was running, and she banged on the window of the car and the driver let her in and then drove away. Johnson then backed his truck away from the guardrail, drove over the sidewalk, and sped off on Plymouth Road toward the white car.

Another eyewitness, Michael Austin, was walking on Mansfield about 11:30 p.m. on October 4, 2009. He saw the blue Dodge Ram truck driving fast and "ramming" the smaller white car. He testified that the truck was "pushing" the white car "with soft little taps." The truck tapped the car at least once from the back, then swerved to the left before swerving back to the right and hitting the white car again. The white car crashed into an electrical pole, and the pole fell down on the vehicle. The blue truck then continued driving away from the scene and did not return to the site of the accident.

2

> Detroit Police Officer Raymond Diaz testified that there was extensive damage to the white car. Detroit Police Officer Gayle Bowden testified that the occupants of the white car were Iesha Thomas and Anthony Jackson, who were both taken to the hospital before her arrival at the scene.
>
> Jackson, the driver, was killed as a result of the accident. Dr. Carl Schmidt, a forensic pathologist who works as a medical examiner for Wayne County, performed a postmortem examination on Jackson on October 5, 2009. He found that Jackson had a six-inch laceration on the back side of his head which caused extensive hemorrhaging of the soft tissues in the scalp, as well as a fracture of the skull which caused a brain injury by distorting the brain stem. Dr. Schmidt testified he had received a report that Jackson's car had been "rammed by another vehicle, deliberately," so he certified Jackson's death as a homicide.
>
> Tara Mitchell is the mother of three of Johnson's children. She testified for the prosecution, albeit unwillingly, about past events involving Johnson's driving. According to Mitchell, on May 19, 2008, she was driving a vehicle when Johnson pulled up beside her in his vehicle and attempted at least twice to cut her off. He also pulled in front of her, put his car into reverse, and backed up in an effort to run her off the road. Then on January 28, 2009, Mitchell was in a vehicle with her husband, Charlie Wright, and at least five, possibly as many as eight, children. There were snow drifts all over the road. Johnson pulled up next to them, yelling at them, and swerving toward them to run them into the snow banks. Johnson then pulled in front of them and slammed on his brakes, causing them to rear-end Johnson's vehicle. Mitchell testified, however, that if the brakes on her vehicle had been better, the car would have been able to stop before hitting Johnson's vehicle. Charlie Wright also testified regarding this incident and admitted assaulting Johnson later at the police station.
>
> Johnson did not testify at trial, but he had given statements to police officers during the investigation, which were recorded on video and played at trial.

*People v. Johnson*, No. 300538, 2011 WL 6378822, *1-2 (Mich. Ct. App. Dec. 20, 2011).

The Michigan Court of Appeals' recitation of the facts is presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

## II.

Petitioner was convicted following a bench trial of second-degree murder, failure to stop at the scene of an accident causing death, and failure to stop at an injury scene resulting in serious impairment or death. On September 22, 2010, Petitioner was sentenced to 25 to 40 years in prison for the murder conviction, 5 to 15 years in prison for the failure to stop at an accident causing death conviction, and 1 to 5 years for the failure to stop at an accident causing serious injury or death conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised this claim:

> Whether the second-degree murder conviction is constitutionally invalid where the prosecution failed to present a sufficient factual basis for a reasonable juror to conclude that Mr. Johnson's conduct was so reckless that it rose to the level of wanton and willful.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Johnson*, No. 300538, 2011 WL 6378822 (Mich. Ct. App. Dec. 20, 2011).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claim raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Johnson*, 491 Mich. 943 (Mich. June 25, 2012).

Petitioner then filed the pending habeas petition. He raises the same claim raised in state court.

### III.

### A.

Upon the filing of a habeas corpus petition, the Court must promptly examine the petition to determine "if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief." Rule 4, Rules Governing Section 2254 cases. If the Court determines that the petitioner is not entitled to relief, the Court shall summarily dismiss the petition. *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face"). The habeas petition does not present grounds which may establish the violation of a federal constitutional right, therefore, the petition will be dismissed.

### B.

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set

of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.**

Petitioner seeks habeas relief on the ground that his conviction for second-degree murder was not supported with sufficient evidence to establish the malice element beyond a reasonable doubt.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency

7

of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998). The malice element is satisfied "by showing that the defendant possessed the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with the knowledge that death or great bodily harm

would be the probable result. . . . Malice can be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Djordjevic*, 584 N.W.2d 610, 612 (Mich. Ct. App. 1998) (internal citation omitted).

The Michigan Court of Appeals rejected Petitioner's sufficiency-of-the-evidence claim, reasoning:

> The evidence showed that Johnson and his girlfriend, Thomas, had been engaged in a domestic dispute on the night of the accident. They were first arguing outside a nightclub. Then, when Thomas tried to go into a gas station, Johnson followed her in, and they continued to argue and were hitting each other inside the gas station. Finally, when they went back outside, Johnson further abused Thomas, hitting her and kicking her in the street. After Johnson forced her into his pickup truck and tried to drive away, Thomas escaped, ran into the street, and banged on the window of Jackson's car, which was stopped at a light nearby. Jackson let Thomas in and drove away quickly. Johnson sped after them in his truck and ran into Jackson's car from behind, then pulled up next to the car and swerved away from it, then swerved back into it, causing it to crash. Jackson died and, on the basis of his examination and reports of the incident, the medical examiner certified Jackson's death as a homicide.
>
> The evidence of Johnson's ill will toward Thomas and intentional striking of Jackson's vehicle shows that Johnson engaged in willful and wanton conduct in satisfaction of the malice element for second-degree murder. Johnson's actions, at a minimum, meet the standard for obvious disregard of life-endangering consequences. . . . It is clear that the act of intentionally repeatedly ramming a moving vehicle with one's own moving vehicle would have the natural tendency or likelihood to cause death or great bodily harm.
>
> Johnson cites *People v. Goecke,* [457 Mich. 442 (Mich. 1998),] for the proposition that drunk driving alone will not support a conviction for second-degree murder. Johnson also cites *People v. Werner*, [254 Mich. App. 528, 531 (2002),] a case in which a defendant was found guilty of second-degree murder because he drove drunk with actual knowledge that drinking heavily had caused him to black out in the recent past and, therefore, knew driving drunk could result in blacking out and causing an accident.
>
> We first note that *Goecke* and *Werner* are distinguishable because, although

9

the record includes evidence that Johnson was intoxicated, he makes no argument that his ability to form the necessary intent was negated by his intoxication, which was at issue in both of those cases.

Further, in *Goecke*, the Michigan Supreme Court stated that, in the three cases consolidated for appeal in that action, the defendants' second-degree murder convictions were justified by behavior that rose to a level of culpability beyond that demonstrated by driving while intoxicated. . . . Johnson fails to realize his own culpability likewise rises to a level beyond that of a drunk driver. In the *Goecke* cases, the defendants were engaging in such conduct as excessive speeding, narrowly avoiding other cars, and running stoplights. . . . These are the actions that took the defendants' conduct into the realm of fault for second-degree murder. . . . Here, Johnson was not only driving fast, he also deliberately rammed into Jackson's vehicle. Under the *Goecke* framework, Johnson's conduct illustrates a level of intent that supports a conviction for second-degree murder.

With respect to *Werner*, Johnson attempts to argue the corollary of its holding in his favor, stating that because his prior experiences of deliberately hitting other cars never resulted in injury to anyone, he had no reason to believe that hitting another car with his truck would cause death or serious injury. Johnson's argument is without merit; it is unreasonable to believe that Johnson could legitimately think that causing an automobile accident is not likely to be a life-endangering action.

Regardless, the Court in *Goecke* held that it is "only a highly unusual case" that requires a determination of a defendant's subjective intent – a case in which the defendant is "more absent-minded, stupid, or intoxicated than the reasonable man." [Id. at 464, 464 n. 25, citing 2 LaFave & Scott, Substantive Criminal Law, § 7.4b, p. 205.] Johnson, despite some intoxication, appeared to retain the usual faculties, obviating the need for a consideration of his subjective intent. It is basic common knowledge that hitting another car could result in death or injury, and it can be inferred that anyone who does so purposely is setting in motion a destructive and life-threatening force. Thus, given Johnson's intentional acts of hitting Jackson's car, and the knowledge that such action is inherently and obviously dangerous to life, we can easily infer the element of malice.

In sum, we conclude that there was sufficient evidence presented at trial to support Johnson's second-degree murder conviction.

*Johnson*, 2011 WL at *3-4.

"A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, __ U.S. __, 130 S. Ct. 665, 674 (2010), (quoting *Jackson*, 443 U.S. at 326).

Petitioner argues that the state court's decision is an unreasonable application of *Jackson* because, unlike the defendants in *Goecke and Werner*, he was not attempting to elude police, did not nearly crash into pedestrians, and did not engage in dangerous driving for a significant amount of time. This argument falls far short of satisfying the doubly deferential standard the Court must apply to the state court's holding. The circumstances leading to the accident in this case are certainly not identical to those preceding the accidents in the *Goecke* and *Werner* cases. But, they need not be so for a rational trier of fact to have found the elements of second-degree murder proven beyond a reasonable doubt. A rational trier of fact could have found that the act of ramming his vehicle against the victims' car while traveling at a high rate of speed created a high risk of death or great bodily harm with the knowledge that death or great bodily harm would be the probable result. Therefore, according the state court's findings of fact a presumption of correctness, this Court concludes

that the Michigan Court of Appeals' decision that sufficient evidence was presented for a finding of guilty of second-degree murder did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to federal habeas corpus relief.

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI.

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED.

It is further ORDERED that a certificate of appealability is DENIED.

It is further ORDERED that leave to appeal *in forma pauperis* is DENIED.

                              s/Gerald E. Rosen  
                              Chief Judge, United States District Court

Dated:  July 1, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 1, 2013, by electronic and/or ordinary mail.

                              s/Julie Owens  
                              Case Manager, (313) 234-5135